UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAURICE RICE,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.
_____

17-CR-103
22-CV-737
DECISION & ORDER

Before the Court are motions filed by the petitioner, Maurice Rice, (1) to correct his sentence under 28 U.S.C. § 2255, Docket Item 990; (2) to lift protective orders, Docket Item 991; (3) to release discovery, Docket Item 1016; (4) to order the Bureau of Prisons ("BOP") to credit state incarceration time to his federal sentence, Docket Item 1026; (5) to reduce his sentence and for compassionate release, Docket Item 1063; and (6) to appoint counsel, Docket Item 1105.[1]  For the reasons that follow, this Court denies Rice's motions.

## **BACKGROUND**

On January 6, 2020, Rice pleaded guilty to counts 1 and 3 of the third superseding indictment, which charged violations of 18 U.S.C. § 1962(d) (racketeering

---

[1] The citations are to the criminal docket, 17-CR-103, and page numbers in docket citations refer to ECF pagination.

conspiracy) and 21 U.S.C. § 846 (conspiracy to distribute 400 grams or more of fentanyl), respectively. *See* Docket Items 500 and 502. Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed to a sentence of 228 months' imprisonment, and Rice waived his right to appeal or collaterally attack any sentence imposed within or below the United States Sentencing Guidelines ("Guidelines" or "USSG") range of 188 to 235 months' imprisonment. Docket Item 500 at ¶¶ 14-15, 24.

During the plea colloquy, this Court questioned Rice extensively to ensure that he was proceeding knowingly and voluntarily. *See* Docket Item 1011. The Court specifically asked whether Rice understood the mandatory minimum sentence of 10 years' imprisonment, and Rice answered that he did. *Id.* at 18. The Court also made sure that Rice understood that if the Court accepted the plea agreement, it would impose a sentence of 228 months—that is, 19 years. *Id.* at 42-43, 47; *see also id.* at 50. And the Court confirmed Rice's understanding that he would not be able to appeal a sentence of imprisonment that was less than 235 months or 19 years and seven months. *Id.* at 46-47.

At sentencing, consistent with the plea agreement, the Court calculated Rice's Guidelines range as 188 to 235 months. Docket Item 834 at 21. The Court then accepted the parties' 11(c)(1)(C) plea and sentenced Rice to 228 months' imprisonment consistent with that agreement. *Id.* at 28; Docket Item 760.

Rice did not appeal. But on September 28, 2022, he filed a pro se motion to vacate his conviction under 28 U.S.C. § 2255, alleging that his counsel had been ineffective. Docket Item 990. The government then asked the Court to order Rice's

2

defense counsel, Daniel Griebel, Esq., to file an affidavit in response, Docket Item 1007, and the Court did so, Docket Item 1009.

Griebel then filed an affidavit under seal describing the relevant parts of his representation of Rice. Docket Item 1015. A few weeks later, Rice moved for discovery. Docket Item 1016. The government responded to Rice's section 2255 motion and his motion for discovery. Docket Item 1018. Rice replied, Docket Item 1020, and subsequently filed several other motions: Docket Item 1026 (motion for an order to the BOP), Docket Item 1063 (motions for compassionate release and sentence reduction), Docket Item 1105 (motion to appoint counsel). The government has responded to Rice's motion for compassionate release and sentence reduction. Docket Item 1087.

## DISCUSSION

**I.      MOTION TO VACATE UNDER 28 U.S.C. § 2255**

Rice first seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). A court may dismiss a section 2255 petition without first conducting a hearing if the petition and record "conclusively show" that the petitioner is not entitled to the relief he seeks. *Id.* § 2255(b). For the reasons that follow, this Court dismisses Rice's petition as untimely.

3

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for the filing of a section 2255 petition, which runs from "the date on which the judgment of conviction bec[ame] final."  28 U.S.C. § 2255(f)(1); see Rabbani v. United States, 156 F. Supp. 3d 396, 402 (W.D.N.Y. 2016).  When the petitioner has appealed the underlying conviction, "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction . . . [that is,] 90 days after entry of the Court of Appeals' judgment."  Id. (alterations in original) (quoting Davis v. United States, 2014 WL 2587718, at *1, (W.D.N.Y. June 10, 2014)).  But when, as here, the defendant does not appeal, the conviction becomes final fourteen days after judgment is entered.  See Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005) ("[F]or purposes of [section] 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."); see also Fed. R. App. P 4(b)(1)(A)(i) (explaining that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed").

Here, Rice's judgment of conviction was entered on June 3, 2020, Docket Item 760, and became final, for purposes of 28 U.S.C. § 2255, 14 days later on June 17, 2020.  See Moshier, 402 F.3d at 118; Fed. R. App. P 4(b)(1)(A)(i).  His deadline to file a section 2255 petition therefore was one year after that—June 17, 2021.  Rice's section 2255 motion to vacate, filed on September 21, 2022, was thus late—more than a year past the statute of limitations.

Rice acknowledges that his petition was not timely filed but argues that he is entitled to equitable tolling.  *See* Docket Item 990 at 7.  More specifically, Rice says that the statute of limitations should be tolled because "(1) his counsel effectively abandoned him post-sentencing and (2) the COVID-19 pandemic and Bureau of Prisons ('BOP') procedures prevented him from filing a timely section 2255 motion."  *Id.*

"Equitable tolling is available for untimely petitions filed pursuant to AEDPA, but its application 'requires an extraordinary obstacle preventing the petitioner from complying with AEDPA's limitations period.'"  *Rabbani*, 156 F. Supp. 3d at 403 (internal citation omitted) (quoting *Rosa v. United States,* 785 F.3d 856, 861 n.5 (2d Cir. 2015)); *see Hizbullahankhamon v. Walker,* 255 F.3d 65, 75 (2d Cir. 2001) ("To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll.'" (citation and internal quotation marks omitted)).  It is the petitioner's burden to demonstrate that equitable tolling applies.  *See Hizbullahankhamon*, 255 F.3d at 75.

"The Second Circuit Court of Appeals has 'set a high bar to deem circumstances sufficiently "extraordinary" to warrant equitable tolling.'"  *Rabbani*, 156 F. Supp. 3d at 403 (quoting *Dillon v. Conway,* 642 F.3d 358, 363 (2d Cir. 2011)); *see also Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017) ("[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000))).  "Whether a circumstance is 'extraordinary' for purposes of equitable tolling is determined by inquiring 'not how unusual the circumstance alleged . . . is among the universe of prisoners, but rather

5

how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'" *Johnson v. United States*, 2014 WL 4545845, at *5 (E.D.N.Y. Sept. 12, 2014) (quoting *Diaz v. Kelly,* 515 F.3d 149, 154 (2d Cir. 2008)).  For example, the Second Circuit has held that "a delay in [a petitioner's] ability to get in contact with his attorney to request a copy of his trial transcripts and other documents, and the temporary withholding of those documents by the prison mail room[,] . . . are far from extraordinary."  *Id.* (quoting *Rivera v. United States,* 448 F. App'x 145, 146 (2d Cir. 2011) (summary order)); *see also Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003) (explaining that "attorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period," nor do "the usual problems inherent in being incarcerated . . . justify equitable tolling" (emphasis omitted)).

Moreover, even if a petitioner identifies "an extraordinary circumstance, [he also] must show that it prevented him from timely filing a [section] 2255 application, i.e., 'a causal relationship between the extraordinary circumstances . . .and the lateness of his filing.'"  *Johnson*, 2014 WL 4545845, at *6 (emphasis omitted) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).  The petitioner cannot make such a showing if, "acting with reasonable diligence, [he] could have filed on time notwithstanding the extraordinary circumstances."  *Valverde*, 224 F.3d at 134.

Here, the government argues that "Rice's explanations for the delay are insufficient to satisfy this heavy burden."  Docket Item 1018 at 8.  "[T]here are no 'extraordinary circumstances,'" the government says, and even if there were, Rice has failed to "'demonstrate a causal relationship between the extraordinary circumstances

6

on which the claim for equitable tolling rests and the lateness of his filing." *Id.* at 7-8 (quoting *Hizbullahankhamon,* 255 F.3d at 75).

This Court agrees with the government. As an initial matter, the caselaw is clear that "the usual problems inherent in being incarcerated"—such as shared computers and time limits on access—"do not justify equitable tolling." *Baldayaque*, 338 F.3d at 152; *see also Hines v. United States*, 2021 WL 2456679, at *3 (S.D.N.Y. June 16, 2021) (explaining that "restricted access to library facilities does not merit equitable tolling, nor does limited access to legal assistance" (internal citation and quotation marks omitted)). And while—as the government acknowledges—"the effects of the COVID-19 pandemic could conceivably present extraordinary circumstances," Docket Item 1018 at 13, "[a] petitioner cannot meet his burden of establishing that a court should apply the doctrine of equitable tolling simply by making a passing reference to the pandemic or the resulting lockdown," *Hines*, 2021 WL 2456679, at *2 (alteration in original) (quoting *United States v. Aigbekaen*, 2021 WL 1816967, at *1 (D. Md. May 6, 2021)). Rather, "[t]he petitioner must establish that he was pursuing his rights diligently and that the COVID-19 pandemic specifically prevented him from filing his motion." *Id.* at *3 (quoting *United States v. Henry*, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020)). Rice has not done so here.

Nor has Rice established that his attorney's alleged "abandonment" of him warrants tolling. *See* Docket Item 990 at 10. While "[e]gregious conduct on the part of a defendant's attorney, or intentional interference by prison personnel on the verge of a filing deadline, may qualify as sufficiently extraordinary," *see Rabbani*, 156 F. Supp. 3d at 403, neither of those circumstances are present here. On the contrary, Rice's

attorney stated in a sworn declaration that this Court's text order on September 1, 2022, "was the first notification the [attorney had] received that . . . Rice was seeking a copy of his file."  Docket Item 988-1 at ¶ 3.  So there is nothing to support Rice's self-serving assertion that his lawyer abandoned him.

And even if—as Rice claims—he was "effectively abandoned" by his counsel, *see* Docket Item 990 at 7, Rice fails to explain how contact with his counsel was necessary to complete his section 2255 petition.  In fact, Rice filed his section 2255 petition despite having not received the requested materials.  *See* Docket Item 990 (section 2255 petition mailed on September 26, 2022); Docket Item 998 (attorney's response to show cause served on September 27, 2022); *cf. United States v. Rodriguez*, 438 F. Supp. 2d 449, 453-54 (S.D.N.Y. 2006) (declining to equitably toll statute of limitations because "even assuming that prison officials intentionally (and wrongfully) confiscated and destroyed [the petitioner]'s legal papers, . . . [t]here [wa]s no discernible basis for concluding [that] the unavailability of [the] legal papers prevented [the petitioner] from filing a timely motion based upon his asserted medical incompetence to stand trial").

In sum, Rice has not presented the sort of "rare and exceptional circumstances [that might] warrant equitably tolling the limitations period."  *See Green v. United States*, 260 F.3d 78, 82-83 (2d Cir. 2001)).  Rice's section 2255 petition, Docket Item 990, therefore is dismissed as untimely.[2]  And his motions "to lift the [p]rotective [o]rders,"

---

[2] Even if this Court were to consider the merits of Rice's arguments, his petition still would not succeed.  In particular, the bulk of Rice's claims are barred by his appeal waiver.  *See Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) ("A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable.").  The only claims that survive that waiver are those

Docket Item 991, for discovery, Docket Item 1016, and to appoint counsel in connection with his section 2255 motion, Docket Item 1105, are denied as moot.

## II.     MOTION FOR AN ORDER TO THE BUREAU OF PRISONS

Rice next asks this Court to "order the BOP to correct [his] offense code statute, violent offense pattern, [and] drug program status," and to "award[ him] credit for" time he served in the Erie County Correctional Facility "that was related to [his] federal offense."  Docket Item 1026 at 1.  The motion states that Rice "wrote to the warden, case manager coordinator, [his] case manager," and others at the facility, but that he "still [has not] heard any answer yet concerning these issues."  *Id.*

Rice attaches an email from his case management coordinator, dated approximately one month before his motion was filed, stating that Rice's request "has been sent up for review" and that the case management coordinator would provide an answer as soon as it was available.  *Id.* at 4.  But it is not clear whether Rice has since received a response from the BOP and therefore whether this issue is now moot.

---

"challenging [Rice's] attorney's *advice* about [Rice's] bargaining position" in plea negotiations.  See *Parisi v. United States*, 529 F.3d 134, 139 (2d Cir. 2008) (per curiam); *see also United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received constitutionally ineffective assistance of counsel during his plea proceedings").  But to prevail on such a claim, Rice not only would have to demonstrate that his counsel was ineffective; he also would have to "show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial."  See *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005).  Rice has not done so, and his attorney's submission belies that claim in considerable detail.  See Docket Item 1015 at ¶¶ 30-74.  Finally, on Rice's claim that his attorney failed to appeal when asked to do so, "[t]he credible assertions in [Rice's] counsel's sworn statement undermine [Rice]'s self-serving assertion that he specifically instructed defense counsel to file an appeal."  See *United States v. Delgado*, 2022 WL 4396627, at *5 (S.D.N.Y. Sept. 23, 2022); *compare* Docket Item 990 at 14-16, *with* Docket Item 1015 at ¶¶ 94-103.

9

Accordingly, his motion for an order to the BOP is denied without prejudice. If Rice's request to the BOP has not been resolved to his satisfaction, he may reapply for relief.

## III.   MOTION TO REDUCE SENTENCE AND FOR COMPASSIONATE RELEASE

Finally, Rice moves to reduce his sentence based on Guidelines Amendment 821 and for compassionate release under 18 U.S.C. §3582(c)(1)(A). Docket Item 1087.

### A.   Motion under Retroactive Guidelines Amendment

In May 2023, the United States Sentencing Commission submitted to Congress an amendment to the Guidelines regarding the calculation of certain defendants' Criminal History points. More specifically, the amendment reduced the offense level calculation for certain defendants by eliminating or reducing the status points assigned under USSG §4A1.1(d), resulting in a lower Guidelines range. On August 24, 2023, the Sentencing Commission voted to apply the amendment retroactively, with an effective date of February 1, 2024.

The amended version of section 4A1.1 instructs the sentencing court to "[a]dd [one] point [to the criminal history points] if the defendant (1) receives [seven] or more points under subsections (a) through (d) [of section 4A1.1], and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." USSG §4A1.1(e). As Rice notes and the government concedes, Rice was given four criminal history points for his prior convictions and "two additional points because he had committed the offense of conviction while under a criminal justice sentence." Docket Item 1087 at 16-17 (citing Docket Item 695 at ¶¶ 152-56). Therefore, as the government also concedes, Rice was given a total of six criminal history points, not four as he would have received

10

under the amended Guidelines. *See* Docket Item 1087 at 16-17 ("Applying the status-points amendment to the defendant, because the calculation of his criminal history resulted in six or less criminal history points, (i.e., four), he would no longer receive any status points.")

But as the government correctly observes, that makes no difference: four criminal history points and six criminal history points both result in criminal history category III and therefore in the same Guidelines calculation. *See id*. ("Nevertheless, even with four criminal history points, [Rice] is still a [c]riminal [h]istory [c]ategory III, such that there is no change in his sentencing [G]uidelines."); *see also* USSG Ch. 5 Pt. A (Sentencing Table).

In other words, even though Rice is correct that he no longer would have two status points added to his criminal history points, those two points make no difference in the Guidelines calculation. And for that reason, this Court denies Rice's motion for a sentence reduction under the retroactive Guidelines amendment.

### B.     Motion for Compassionate Release

Under 18 U.S.C. § 3582, a court "may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In other words, the Court's "analysis does not end with a finding that 'compelling and extraordinary reasons' warrant compassionate release." *United States v. Daugerdas*, 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020). The Court must also "'consider the factors set forth in section 3553(a),'" *id.*, and a conclusion that a reduction of the defendant's sentence would not be consistent with

section 3553(a) provides an "independent basis" to deny compassionate release, *United States v. Fleming*, 5 F.4th 189, 194 (2d Cir. 2021).

Here, even if Rice were able to establish an extraordinary and compelling reason, he would still not be eligible for compassionate release because the section 3553(a) factors do not warrant a sentence reduction at this time.[3]  As the government observes, Rice's "conduct involved *three* attempted murders, possession with intent to distribute 400 grams or more of fentanyl, and distribution of fentanyl resulting in death." Docket Item 1087 at 19; *see* Docket Item 695 at ¶¶ 9-108.  And to date Rice has served only about seven years of his 19-year sentence.  *See* Docket Item 1087 at 19.  Thus, this Court finds that a sentence reduction at this time "would undermine the goals of the original sentence."  *See United States v. Tisdale*, 2022 WL 16951307, at *3 (S.D.N.Y. Nov. 15, 2022) (quoting *Musa v. United States*, 502 F. Supp. 3d 803, 810 (S.D.N.Y. 2020)).

For all those reasons, Rice's motion for compassionate release is denied without prejudice.

## CONCLUSION

For the reasons stated above, Rice's motion to vacate under 28 U.S.C. § 2255, Docket Item 990, is DENIED, and his motions to lift protective orders, Docket Item 991, to release discovery, Docket Item 1016, and to appoint counsel, Docket Item 1105, are

---

[3] The government also argues that Rice has failed to exhaust his administrative remedies with respect to some of his arguments.  *See* Docket Item 1087 at 8-9.  For the purposes of this decision, this Court assumes without deciding that Rice has sufficiently exhausted his administrative remedies.

DENIED AS MOOT.  His petition in W.D.N.Y. Case No. 22-cv-737 is DISMISSED, and the Clerk of the Court shall close that case.  Rice's motions for an order to the BOP, Docket Item 1026, and for compassionate release, Docket Item 1063, are DENIED WITHOUT PREJUDICE.  His motion for a sentence reduction based on the retroactive Guidelines amendments, Docket Item 1063, is DENIED.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. United States,* 369 U.S. 438 (1962).  The Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, the Court denies a certificate of appealability.

Rice must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 14 days of the date this decision and order.[4]  Fed. R. App. P. 4(b)(1)(A).  Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

---

[4] Because a section 2255 petition is a civil matter, Rice has up to 60 days to file a notice of appeal with respect to this Court's dismissal of his section 2255 petition, *see Williams v. United States*, 984 F.2d 28, 31 (2d Cir. 1993).  But he must appeal this Court's denial of his criminal motions within 14 days.  *See United States v. Williams*, 2023 WL 1977601, at *1 (2d Cir. Feb. 14, 2023) (summary order).

SO ORDERED.

Dated:   February 10, 2025
         Buffalo, New York

                                           */s/ Lawrence J. Vilardo*
                                           LAWRENCE J. VILARDO
                                           UNITED STATES DISTRICT JUDGE